**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**RAMONITA MOJICA-BIBILONI,**

       **Plaintiff,**

    **v.**                          **5:14-CV-1130**

**CAROLYN W. COLVIN, Commissioner of**
**Social Security,**

       **Defendant.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**THOMAS J. McAVOY**
**Senior United States District Judge**

**DECISION and ORDER**

      Plaintiff Ramonita Mojica-Bibiloni brought this suit under § 205(g) of the Social

Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review a final decision of the

Commissioner of Social Security ("Commissioner") denying her  application for

supplemental security income ("SSI") benefits.  Plaintiff alleges that the decision of the

Administrative Law Judge ("ALJ") denying her application for benefits is not supported by

substantial evidence and is contrary to the applicable legal standards. Pursuant to

Northern District of New York General Order No. 8, the Court proceeds as if both parties

had accompanied their briefs with a motion for judgment on the pleadings.

**I.**    **PROCEDURAL HISTORY**

      On June 14, 2011, Plaintiff filed an application for SSI benefits.  The claim was

denied by initial determination dated October 6, 2011.  Plaintiff filed a timely request for a

1

hearing on November 23, 2011. Administrative Law Judge ("ALJ") Lawrence Levy presided over a hearing via teleconference on October 12, 2012. The ALJ issued an unfavorable decision on November 16, 2012, which Plaintiff appealed. The Social Security Appeals Council denied his appeal on August 14, 2014. This action followed.

As indicated above, Plaintiff brings this action under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review the Commissioner's final decision.

## II.     FACTS

The parties do not dispute the underlying facts of this case as set forth by Plaintiff in her memorandum of law. Accordingly, the Court assumes familiarity with these facts and will set forth only those facts material to the parties' arguments.

## III.     THE COMMISSIONER'S DECISION

The ALJ engaged in the required five-step analysis to determine whether a claimant qualifies for disability benefits. (See Social Security Administrative Record ("R."), dkt. # 11, at 27-36). The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since June 14, 2011, the application date. (Id. at 29). Second, the ALJ concluded that Plaintiff suffered from a set of severe impairments that included: hypertension, history of asthma, low back pain, history of carpal tunnel syndrome status-post surgical repair, obesity, history of knee pain, affective disorder, PTSD, and personality disorder. (Id.). These impairments, the ALJ found, represented more than minimal limitation in Plaintiff's ability to perform work-related activity. (Id.).

Turning to the next step in the evaluation process, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically exceeded

the severity of one of the impairments listed in the Social Security regulations. (Id.). Plaintiff's attorney had conceded as much at the hearing. (Id.). The ALJ also found that Plaintiff's mental impairments, whether considered singly or in combination, did not meet any of the criteria in the appropriate listings. (Id.). Plaintiff did not have the marked impairments in two areas required to satisfy the "paragraph B" criteria. (Id.). Plaintiff had no more than a mild restriction due to her emotional impairments; she engaged in "a full range of daily activities including cooking, cleaning, and doing laundry." (Id. at 30). She was "reportedly capable of caring for her home and children." (Id.). The ALJ found that Plaintiff had "mild difficulties" in social functioning. (Id.). She was frightened to go out alone and reported that she did not engage in any social activities. (Id.). Still, she reported no problems getting along with others, and an examining doctor found her social skills "adequate." (Id.). Plaintiff could get along with others moderately well. (Id.). The ALJ assigned Plaintiff moderate difficulties in concentration, persistence or pace. (Id.). Plaintiff had difficulty paying attention, and the medical record demonstrated memory issues. (Id.). The examiner found a "mildly impaired" memory and difficulty in dealing with stress." (Id.). Plaintiff had not experienced any episodes of decompensation. (Id.). Plaintiff also failed to meet the "paragraph C" criteria; she had not experienced any episodes of decompensation and could not be expected to decompensate if a minimal increase in mental demands or a change in environment were required. (Id.). Plaintiff's post-traumatic stress disorder ("PTSD") failed to qualify as well, since nothing in the treatment records demonstrated that Plaintiff was incapable of functioning independently outside the home. (Id.).

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC")

3

to perform light work as defined in the Social Security regulations, except that she could only occasionally climb ramps or stairs, was precluded from climbing ladders, ropes, or scaffolds, and from kneeling, crouching, and crawling.  (Id. at 31).  Plaintiff could also occasionally engage in balancing and stooping, and was required to avoid concentrated exposure to temperature extremes, excessive humidity, and environmental irritants.  (Id.).  She could communicate only in Spanish, and was limited to performing simple, routine and repetitive tasks.  (Id.).  Her work environment needed to be free of any fast-paced production requirements, involve only simple work-related decisions.  (Id.).  That workplace also required "few, if any changes," and only occasional interpersonal interaction with the general public, coworkers and supervisors.  (Id.).

The ALJ summarized the medical evidence and Plaintiff's hearing testimony.  (Id. at 31-35).  The ALJ noted that Plaintiff claimed she suffered from depression, PTSD, back problems, knee issues, asthma, and carpal tunnel syndrome.  (Id. at 31).  Plaintiff also alleged problems with concentration and memory, claimed she lacked motivation, experienced crying spells, had difficulty speaking and had "breakthrough" PTSD symptoms.  (Id.).  Plaintiff claimed that she had a poor memory, needed to be reminded to take medication, and would often forget what she was doing.  (Id.).  She also alleged that her PTSD made her afraid to go out alone and be around crowds.  (Id.).  She preferred to be alone most the time.  (Id.).  Plaintiff also claimed difficulty in performing "personal hygiene chores" because of pain her arms, hands and back.  (Id.).  She claimed an inability to lift due to pain in her joints, that she could not sit, stand or walk for very long, had trouble climbing stairs, and was unable to kneel or squat.  (Id.).  She asserted she could reach only for short periods and could not perform tasks requiring use of her hands

4

because of recurrent carpal tunnel symptoms.

While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, Plaintiff's claims about the intensity, persistence, and limiting affects of those impairments were not entirely credible due to discrepancies between the record and her statements. (Id. at 32). Plaintiff testified that she always used a cane, but the medical records indicated she used a cane only periodically. (Id.). The consultative examiner found that the cane was not necessary. (Id.). Further, Plaintiff limped for one consultative examination, but did not limp at another examination on the same day. (Id.). Plaintiff claimed limitations from her carpal tunnel surgery, which had occurred years previously, but she exhibited no problems with hand use during the consultative examination. (Id.). "[E]ven her exceptionally supportive treating physician" found no limitations with regard to gross and fine manipulation. (Id.). Plaintiff was also inconsistent about her reasons for leaving her last job. (Id.). She claimed back pain made working impossible, but had earlier claimed domestic violence led her to quit. (Id.).

The ALJ also found Plaintiff's claims regarding the severity of her physical ailments less than fully credible. (Id.). The consultative medical examiner found claimant in no acute distress, had a normal gait, could perform a full squat, and appeared normal by other measures as well. (Id.). He found that Plaintiff had normal grip strength and dexterity in her hands. (Id.). Plaintiff's pulmonary functioning was normal. (Id.). The ALJ noted that these findings were consistent with Plaintiff's treatment records. (Id.).

Similarly, the ALJ concluded that Plaintiff was less than fully credible regarding the limits caused by her mental impairments. (Id.). The ALJ noted that the consultative

psychological examiner had found that Plaintiff had adequate social skills, intact thought processes, intact attention and concentration and a mildly impaired memory. (Id.). These findings were consistent with Plaintiff's treatment records. (Id.). Those records also indicated that claimant could perform her own activities of dialy living and care for her home and children.[1] (Id. at 33).

Next, the ALJ found that Plaintiff could not perform any past relevant work. (Id. at 35). Because the Plaintiff cannot communicate in English, the ALJ considered her case in the same was as an individual illiterate in English. (Id.). The ALJ then concluded that, considering the Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which she could perform. (Id.). The vocational expert had testified that Plaintiff could perform the requirements of a number of representative occupations, such as mail clerk, marker, and ironer. (Id. at 36-37). Because such jobs were available to a person with Plaintiff's RFC, the ALJ concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and that a finding of "not disabled" was required. (Id. at 37).

Plaintiff challenges these findings in various respects.

## IV.    STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999);

_____

[1]The Court notes that the record indicates that Plaintiff lived with only one child at the time of the ALJ's decision.  She has two other adult children who do not live with her.

6

Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d

Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16,

1997)(Pooler, J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  Second,

the Court must determine whether the Commissioner's findings are supported by

substantial evidence in the administrative record. See Tejada, 167 F.3d at 773; Balsamo,

142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.

1982).  A Commissioner's finding will be deemed conclusive if supported by substantial

evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748

F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de*

*novo* whether a Plaintiff is disabled.  The [Commissioner's] findings of fact, if supported by

substantial evidence, are binding.")(citations omitted).  In the context of Social Security

cases, substantial evidence consists of "more than a mere scintilla" and is measured by

"such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d

842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206,

217, 83 L. Ed. 126 (1938)).  Where the record supports disparate findings and provides

adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing

court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29,

36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v.

Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).  Although the reviewing court must give

deference to the Commissioner's decision, a reviewing court must bear in mind that the

Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion

rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

## V.    DISCUSSION

Plaintiff offers three grounds for challenging the opinion of the ALJ.  The Court will address each in turn.

### A.    Consideration of Plaintiff's Obesity

Plaintiff first argues that the ALJ did not evaluate the effects of her obesity properly. The ALJ mentioned Plaintiff's obesity, but he did not relate her obesity to limitations caused by her back impairments.  Plaintiff contends that this failing violated Social Security regulations.  The Commissioner responds that the record demonstrates that the ALJ sufficiently considered the Plaintiff's obesity in assigning her RFC, and that substantial evidence in the form of evaluations by examining physicians supported this finding.

In describing the Plaintiff's impairments, the ALJ found that she suffered from: "hypertension, history of asthma, low back pain, history of carpal tunnel syndrome status-post surgical repair, obesity, history of knee pain, affective disorder, PTSD, and personality disorder."  (R. at 29).   Plaintiff alleges that the ALJ "did not properly relate the obesity to the limitations resulting from her back impairment in accordance with the Social Security Administration's own rulings and regulations."  (See Plaintiff's Brief, dkt. # 14, at 11).  Plaintiff fails to explain how her obesity should have caused the ALJ to find additional limitations that would have altered his evaluation.

The Social Security regulations require that "when determining whether an

individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity." 20 CFR Part 404 Appendix 1 § 1.00(Q). The ALJ's opinion states that "[t]he undersigned has considered the claimant's obesity pursuant to SSR 02-1p in determining [her] residual functional capacity, and it is reflected in the assessed postural limitations." (R. at 32). Before assigning those limitations, the ALJ noted that Plaintiff's claimed limitations were not entirely credible, since examinations and testing had revealed that she was capable of extensive bending, that she had a normal gait, and did not appear to move with any distress. Still, the ALJ wrote, he had given Plaintiff "the benefit of any reasonable doubt" and concluded that Plaintiff could perform only light work with limits and prohibitions on her ability to kneel, crouch, climb, balance and stoop. (Id.).

The Court finds that the ALJ sufficiently considered the additional effects of obesity on Plaintiff's limitations. Pointing to evidence from examinations, the ALJ added limitations not found by the examining physician, and then stated that Plaintiff's obesity played a role in these added restrictions. The ALJ may not have stated in great detail the ways that Plaintiff's obesity affected the limitations he assigned, but "[w]hen . . . the evidence of record permits [the court] to glean the rationale for an ALJ's decision," the ALJ need not "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.3d 1033, 1040 (2d Cir. 1983). Here, the Court notes that the medical evidence indicates that Plaintiff had gained a great deal

9

of weight in a few years before the ALJ rendered his decision, and complained of significant pain in her back and joints. The Court also notes that objective findings in the medical record do not establish that Plaintiff suffered significant injuries or chronic conditions limiting her movement. The record does not contain extensive MRI studies, records of long-term treatment for particular injuries, or even extensive reports of ill health specifically related to obesity. Consideration of the record thus permits the Court to find that the ALJ properly considered the debilitating effects of Plaintiff's obesity in assigning limitations not immediately present in the medical record or in the examiner's reports the ALJ found most credible. The Plaintiff's motion will be denied in this respect.

### B.    Weight Assigned to Opinion of Treating Physician

Plaintiff next argues that the ALJ erred by not finding Plaintiff disabled pursuant to 20 C.F.R. Pt. 404, Subpt. P. App.2; § 201.17.[2]  If the ALJ had properly assigned to Plaintiff the ability to do only sedentary work, the Social Security regulations would have required him to find Plaintiff disabled.  Plaintiff's argument here is predicated on a claim that the ALJ failed to assign proper weight to the opinion of Plaintiff's treating physician.  Plaintiff argues that she suffers from "multiple physical impairments" which "impose limitations that significantly erode the plaintiff's occupational base, limiting her to sedentary work or less."  Since Plaintiff's treating physician found her incapable of even sedentary work, Plaintiff

─────────────────────

[2]Plaintiff asserts that this regulation establishes that a claimant is disabled if she has:
> (1) an extremely limited proficiency in English;
> (2) has no transferrable skills;
> (3) can no longer perform her past relevant work;
> (4) is limited to the performance of "sedentary work," or less;
> (5) is further limited by her psychiatric impairments.

argues, if the ALJ had assigned controlling weight to that opinion he would have found Plaintiff disabled.

Normally, an ALJ is required to find a treating physician's opinion to be controlling when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. 404.1527(c)(2). "On the other hand, in situations where 'the treating physician issued opinions that [were] not consistent with other substantial evidence in the record, such as the opinion of other medical experts,' the treating physician's opinion 'is not afforded controlling weight." Pena ex rel. E.R. v. Astrue, 2013 WL 1210932, at *15 (E.D.N.Y. March 25, 2013) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell, 177 F.3d at 133. "'[T]o override the opinion of the treating physician, we have held that the ALJ must consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). An ALJ must "set forth her reasons for the weight she assigns to the treating physician's opinion." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Plaintiff's argument here does not address the reasons that the ALJ offered for declining to give Plaintiff's treating physician's opinion controlling weight. Instead, Plaintiff simply quotes the reasons behind the rule that a treating physician's opinion is normally entitled to controlling weight. In any case, the ALJ stated clearly his basis for failing to assign controlling weight to Dr. Triano's opinion, and those reasons considered the factors cited above. The ALJ explained:

> Dr. Triano, the claimant's treating provider, opined that the claimant can frequently carry 5lbs or less, occasionally carry 10lbs or less, stand or walk for 3 hours or less, sit for 1 hour or less, and can never, climb, balance, crouch or crawl. Dr. Triano opined that the claimant has mild limitations on her ability to reach, but no limitations in handling, fingering, or feeling. The undersigned has given Dr. Tirano's opinion little weight, as it is inconsistent with the generally benign results reported in his contemporaneous exams, the findings of Dr. Ganesh [the examining physician], the claimant's level of daily activities, and the credible medical and non-medical evidence as a whole. Dr. Triano also made no attempt to provide objective support for the conclusions reached on these form reports. Further, and as the courts have long recognized, form reports, in which a source's only obligation is to fill in a blank or check off a box, are entitled to little weight in the adjudicative process. See, e.g., Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (terming form reports "weak evidence at best"); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that the ALJ "permissibly rejected" three psychological evaluations "because they were check-off reports that did not contain any explanation of the basses of their conclusions."); O'Leary v. Schweiker, 710 F.2d 1334, 1341 (8th Cir. 1983) ("[W]hile these forms are admissible, they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole.").

(R. at 34).

The Court finds that the ALJ offered good reasons for rejecting the opinion of the treating physician and considered all of the required factors. The ALJ explained that Dr. Triano's opinions, offered by a primary care physician, contradicted the evidence of his own treatment of Plaintiff in proposing severe restrictions. The ALJ also pointed out that Dr. Triano did not explain why he suggested that Plaintiff be assigned severe restrictions in light of the minor treatment he had provided. The ALJ's examination of the medical

evidence also indicates that he properly explored the frequency length, extent and nature of Triano's treatment.

Since the Court has found that ALJ had good reasons for his opinion assigning little weight to Dr. Triano's opinion and Plaintiff's argument in this respect focuses only on the weight the ALJ provided to that opinion, the Court must reject Plaintiff's motion in this respect as well.

### C. Evaluation of Plaintiff's Mental Condition

Finally, Plaintiff argues that the ALJ erred in evaluating her mental condition. The limitations caused by that condition, she contends, were far more severe than found by the ALJ and alone would justify a finding of disabled. Plaintiff contends that the ALJ lacked substantial evidence for his opinion as her treating doctors reported conditions which demonstrated marked limitations in concentration, persistence and pace, and marked limitations in social functioning. This medical evidence, Plaintiff contends, supports the opinion of her treating psychiatrist. As such, the ALJ erred in failing to give controlling weight to that opinion.

Plaintiff points to a great deal of evidence that supports her claim that she suffers from a disability due to her mental illnesses. She does not analyze specifically how the evidence to which she points supports a finding that Plaintiff met the listing requirements for mental illness. The Court concludes that the ALJ had substantial evidence to support his findings regarding Plaintiff's mental limitations. The ALJ found, and evidence in the record supports, that Plaintiff engaged in a full range of daily activities, despite her illness. She cooked, cleaned, did laundry, and cared for her teenaged daughter. Any limits to taking care of her personal hygiene resulted from her physical limitations. Similarly, the

13

finding that Plaintiff had mild difficulty with social functioning is supported by substantial evidence that, despite failing to engage in social activities and being frightened to go out alone, examiners still found that Plaintiff could interact and get along with others at least moderately well. No episodes of decompensation are contained in the record. Because even a marked limitation with reference to concentration, persistence or pace would not yield a finding of disability under Paragraph B without repeated episodes of decompensation, the Court must find that the ALJ had substantial evidence for his findings in this respect.

Moreover, Plaintiff's treatment records indicate that she has demonstrated the ability while using medicaiton to "process information and answer question[s] appropriately." (R. at 358). Similarly, the record demonstrates that Plaintiff had no episodes of decompensation. No doctor has predicted that a minimal increase in mental demands or a change in environment would lead to decompensation. Plaintiff has no history of supportive living arrangements, and her PTSD does not prevent her from functioning independently outside the home. The records of Plaintiff's treatment providers show that she is capable of caring for her daughter, in part by picking her up from her school. (R. at 368). The ALJ therefore had substantial evidence to find that Plaintiff failed to satisfy the paragraph C criteria.

In any case, Plaintiff does not directly argue that the ALJ lacked substantial evidence to support his findings with reference to the paragraph B and C listings. Instead, Plaintiff's argument focuses on whether the ALJ assigned improper weight to the opinion of her treating psychiatrist. The legal standard recited in section B above applies here as well. With reference to Dr. Meridell Lopez, who the ALJ identified as "a psychological

treatment provider," the ALJ stated that Dr. Lopez:

> opined that the claimant has extreme limitations to her ability to relate to family and acquaintances, deal with the public, use judgment, relate to authority figures, deal with stress, and maintain attention and concentration. Dr. Lopez opined that the claimant has moderate limitations following the rules and functioning independently. Dr. Lopez opined that the claimant has marked limitations in understanding, remembering and carrying out simple, detailed, and complex instructions. Dr. Lopez further opined that the claimant has extreme limitations in her ability to behave in an emotionally stable manner and demonstrate reliability, marked limitations relating predictably in social situations, and none or mild limitations maintaining personal appearance. The undersigned has given Dr. Lopez's opinion little weight, as it is a form report, as it is inconsistent with treatment notes that detail a progressive improvement in the claimant's condition, and is inconsistent with the claimant's own testimonial and documentary admission that she gets along well with others and with the claimant's range of daily activities. The undersigned further notes that Dr. Lopez's conclusory assertions are set forth on a check-off form report, entitled to little weight in the adjudicative process (as noted above), a report that includes almost no objective findings supportive of such assertions.

(R. at 34).

The Court finds that the ALJ provided good reasons for the weight assigned to Dr. Lopez's opinion. The ALJ described Dr. Lopez's speciality and treatment of the Plaintiff, compared Dr. Lopez's opinion with the record of his treatment of Plaintiff and other records concerning her mental state, and explained how Plaintiff's own testimony was inconsistent with the restrictions assigned by Dr. Lopez. The ALJ also noted that the report Dr. Lopez signed was a form report offering no substantive explanation for his findings. The Court must therefore find that the ALJ had good reasons for assigning limited weight to Dr. Lopez's opinion. The Court will deny the Plaintiff's motion on these grounds as well.

15

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is

**DENIED.**  The Commissioner's motion for judgment on the pleadings is **GRANTED**. The

decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

Dated:March 9, 2016


Thomas J. McAvoy
Senior, U.S. District Judge